JUDGE FRANK MONTALVO

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

FILED
22 JUL 22  AM 10: 09

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY

| | |
|---|---|
| **ERIK SALAIZ,** §<br>§<br>**Plaintiff,** §<br>§<br>**v.** §<br>§<br>**SOLAR PANEL FLORIDA CORP,** §<br>a Florida Corporation, and **ALEXANDER** §<br>**RODRIGUEZ** §<br>§<br>**Defendants.** §<br>§ | **EP22CV0251** |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.     Plaintiff ERIK SALAIZ is a natural person and is a citizen of the Western District of

Texas and was present in the Western District of Texas during all calls at issue in this case.

2.     Defendant SOLAR PANEL FLORIDA CORP, ("SPF") is a corporation organized and

existing under the laws of Florida and can be served via its registered agent, Alexander

Rodriguez at 830 Livestock Loop, Saint Cloud, Florida 34771.

3.     Defendant ALEXANDER RODRIGUEZ, ("Rodriguez") is a natural person, resident of

Florida, chief executive officer of Defendant SPF and can be served at 830 Livestock Loop,

Saint Cloud, Florida 34771.

4.  Defendants SPF and Rodriguez are hereinafter collectively referred together as

"Defendants".

### NATURE OF ACTION

1

5.      As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

6.      Plaintiff Erik Salaiz ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendant SPF telemarketers and agents placed illegal unauthorized telemarketing phone calls to him at the authority from Defendant Rodriguez in violation of the TCPA.

7.      Defendant SPF offers solar panel systems to consumers.  As part of marketing their services, Defendant SPF hired and authorized telemarketers to place illegal unauthorized phone calls to Plaintiff's cell phone that used an automatic telephone dialing system ("ATDS").

8.      Plaintiff never consented to receive any of these phone calls, which were placed to him for telemarketing purposes.

## JURISDICTION AND VENUE:

9.      This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

10.      This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing calls to Plaintiff, and adds little complexity to the case, so it is unlikely to predominate over the TCPA claims.

2

11.     This Court has personal jurisdiction over Defendants because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

12.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants regularly conduct business in the State of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

13.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

14.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

15.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

16.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

17.     Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

18.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

19.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

20.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

21.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any goods or service.

22.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

4

regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

23.     The FCC confirmed this principle in 2013, when it explained that "a seller …may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

24.     Under the TCPA, a text message is a call. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

25.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## **FACTUAL ALLEGATIONS:**

26.     Plaintiff's personal cell phone number (915) 490-0898 has been successfully registered on the National Do-Not-Call Registry since August 2021.

27.     Defendant Rodriguez hires and authorizes telemarketers to make unauthorized phone calls to thousands of consumers *en masse* using an ATDS to solicit Defendant SPF's solar panel systems.

28.     Defendant Rodriguez approves of the contracts with these telemarketers.

29.     Defendant Rodriguez pays the telemarketers out of bank accounts they own and control.

30.     Defendant Rodriguez are well aware that the unauthorized phone calls being made on their behalf soliciting their solar panel systems violate the TCPA.

31.     Defendants knowingly and willfully violate the TCPA because doing so benefits them financially when consumers purchase their solar panel systems.

32.     Plaintiff received at least five (5) unauthorized phone calls to his personal cell phone (915) 490-0898 from or on behalf of Defendant SPF within a seven-day period.

33.     Plaintiff has never had any relationship with Defendant SPF and never knew who Defendant SPF was prior to the unauthorized phone calls being made to his cell phone.

34.     On April 29, 2022, and May 3, 2022, Plaintiff received multiple phone calls to his personal cell phone from a female telemarketer soliciting free quotes for solar panel systems.

35.     On May 3, 2022, at 2:34 PM Plaintiff received a call to his personal cell phone (915) 490-0898 from a telemarketer calling on behalf of Defendant SPF from phone number (972) 994-6933.

36.     Plaintiff answered and was greeted by a telemarketer named Mary.

37.     Mary stated, "just reaching back if you were able to get your free quote done yet for solar?"

38.     Plaintiff was irritated and frustrated for continuing to receive unauthorized phone calls from the same telemarketers soliciting solar panels and advised Mary he was interested in setting up an appointment to have a free solar quote for the sole purpose of identifying the company responsible for authorizing telemarketers to call his personal cell phone.

39.     Mary asked Plaintiff if he was the homeowner and collected his address.

6

40.     Mary then asked Plaintiff qualifying questions about his credit rating, how much his electric bill was every month, and what electric company he was with.

41.     Mary advised Plaintiff his appointment was scheduled for Thursday May 5, 2022, at 11:00 AM and her specialist will be reaching out to him to confirm the appointment and to give a heads up about the program.

42.     On the same day May 3, 2022, at 2:54 PM Plaintiff received a call to his personal cell phone (915) 490-0898 from a representative named Neysha Ortiz calling on behalf of Defendant SPF from phone number (787) 245-6591.

43.     Neysha advised Plaintiff that she knows his appointment is scheduled for May 5, 2022, at 11:00 AM but she can reschedule if needed.

44.     Neysha rescheduled Plaintiff's appointment for May 4, 2022, at 10:00 AM and advised Plaintiff the appointment will be with her and her husband through zoom and she will be texting him the link.

45.     Neysha asked Plaintiff to send her a picture of his electric bill so she can build him a proposal for solar panel systems on behalf of Defendant SPF and show him how much he can save on his electric bill.

46.     Neysha advised Plaintiff she's in Orlando, Florida and her company is Solar Panel Florida confirming the company responsible for the unauthorized phone calls made to Plaintiff's personal cell phone.

47.     Moments after, Plaintiff received a text from Neysha from phone number (787) 245-6591 with a link to the zoom appointment.

48.     On May 4, 2022, at 10:00 AM Plaintiff clicked on the zoom link and was greeted by Neysha and her husband Danny.

7

49.     Neysha then went over the presentation and discussed the benefits of installing solar panel systems.

50.     Neysha advised Plaintiff the cost of their solar panel systems would be $98/mnth for 25 years for a total of $32,341 and solicited Plaintiff for solar panel systems on behalf of Defendant SPF.

51.     Neysha advised Plaintiff that Defendant SPF are associated with Texas Solar Panel, and they are their installers in Texas.

52.     On May 11, 2022, Neysha text a link to Plaintiff's cell phone that contained the proposal for solar panel systems on behalf on Defendant SPF. *"See Exhibit A."*

53.     Defendant SPF trains their telemarketers not to say they are calling on behalf of Defendant SPF for the sole purpose of ducking liability for violating the TCPA.

54.     Defendant SPF knew the calls were being directed into the Western District of Texas and also knew these actions could cause them to be summoned into court as a result of those actions.

55.     Table A below summarizes the phone calls Plaintiff received on behalf of Defendants.


Table A:

| Number: | Date | Time | Caller ID | Notes |
|---------|------|------|-----------|-------|
| 1 | 04/29/2022 | 11:39 AM | 432-239-5565 | Call from Defendant SPF telemarketer |
| 2 | 04/29/2022 | 3:28 PM | 207-203-7257 | Call from Defendant SPF telemarketer |
| 3 | 05/03/2022 | 10:07 AM | 325-237-8508 | Call from Defendant SPF telemarketer |
| 4 | 05/03/2022 | 2:34 PM | 972-994-6933 | Call from Defendant SPF telemarketer Mary |
| 5 | 05/03/2022 | 2:54 PM | 787-245-6591 | Call from Defendant SPF rep Neysha |

56.     Defendant SPF employs outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

57.     Defendant SPF and their agents and co-conspirators amassed lists of thousands of potential customers from public records, and data aggregators, and then placed phone calls using an ATDS *en masse* to market their solar panel systems.

58.     Defendants have knowledge of and have adopted and maintained TCPA violations as a sales strategy. Defendants knew full well that offshore telemarketers are calling and harassing consumers in an attempt to procure business on behalf of the Defendant SPF. Defendant SPF willfully accepts these referrals and compensate the telemarketers for their illegal unauthorized phone calls.

59.     Defendant Rodriguez refuses to take any action to stop or curtail the unlawful sales practices that violate the TCPA because these practices benefit Defendans financially.

60.     Defendants are not registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations. The https://direct.sos.state.tx.us/telephonesearch.asp website ("Texas Registration Database") does not contain Defendants registration.

61.     Defendants do not qualify for an exemption under § 302.053.

62.     No emergency necessitated none of the alleged phone calls.

63.     Plaintiff sent an internal do-not-call policy request to Defendant SPF to email solarpanelfl@solarpanelfl.com on July 18, 2022 which is an email listed on their website they own and control https://panelessolaresfl.com.

64.     Despite this e-mail, Defendant SPF failed and/or refused to send Plaintiff a do-not-call policy.

65.     Upon information and belief, the Defendant SPF did not have a written do-not-call policy while it was sending Plaintiff the unauthorized phone calls.

66.     Upon information and belief, the Defendant SPF did not train their agents who engaged

9

in telemarketing on the existence and use of any do-not-call list.

67.     Such conduct violates the TCPA and its implementing regulations, 47 CFR §

64.1200(d)(3)(requiring telemarketers to honor and record DNC requests when made).

68.     Plaintiff was harmed by these calls. Plaintiff was temporarily deprived of legitimate use

of his phone because the phone line was tied up during the telemarketing calls and his privacy

was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating,

obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused

Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from

otherwise using his telephone for lawful purposes.

## VICARIOUS LIABILITY OF DEFENDANT SPF

69.     Defendant SPF is vicariously liable for the telemarketing calls that generated the lead on

their behalf.

70.     The FCC is tasked with promulgating rules and orders related to enforcement of the

TCPA. 47 U.S.C. § 227(b)(2).

71.     The FCC has explained that its "rules generally establish that the party on whose behalf a

solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13

(1995).

72.     The FCC reiterated that a company on whose behalf a telephone call is made bears the

responsibility for any violations. *In re Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf

of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a

third party on another entity's behalf under 47 U.S.C. § 227(b)).

73.    The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post

may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its
> telemarketing activities to unsupervised third parties would leave
> consumers in many cases without an effective remedy for telemarketing
> intrusions. This would particularly be so if the telemarketers were
> judgment proof, unidentifiable, or located outside the United States, as is
> often the case. Even where third-party telemarketers are identifiable,
> solvent, and amenable to judgment limiting liability to the telemarketer
> that physically places the call would make enforcement in many cases
> substantially more expensive and less efficient, since consumers (or law
> enforcement agencies) would be required to sue each marketer separately
> in order to obtain effective relief. As the FTC noted, because sellers may
> have thousands of independent marketers, suing one or a few of them is
> unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted)

(alteration marks and internal quotation marks omitted).

74.    More specifically, *Dish* held that, even in the absence of evidence of a formal contractual

relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the

telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

75.    The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's

liability requires a finding of formal agency and immediate direction and control over the third-

party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

76.    To the contrary, the FCC—armed with extensive data about robocalls and Americans'

complaints about them—determined that vicarious liability is essential to serve the TCPA's

remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587

¶ 36.

77.     Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

78.     Defendant SPF is legally responsible for ensuring that the affiliates that make telemarketing calls on their behalf comply with the TCPA when so doing.

79.     Defendant SPF knowingly and actively accepted business that originated through illegal telemarketing.

80.     Defendant SPF knew (or reasonably should have known) that their telemarketer was violating the TCPA on their behalf but failed to take effective steps within their power to force the telemarketer to cease that conduct.

81.     By hiring a company to make calls on its behalf, Defendant SPF "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

82.     Moreover, Defendant SPF maintained interim control over the actions of its telemarketers.

83.     For example, Defendant SPF had absolute control over whether, and under what circumstances, they would accept a customer from its telemarketers.

84.     Furthermore, Defendant SPF had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using an ATDS to contact potential customers of Defendant SPF and the ability to require them to respect the National Do Not Call Registry.

85.     Defendant SPF also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

86.     Defendant SPF donned its telemarketers with apparent authority to make the calls at issue. Thus, the telemarketers pitched "solar panel system" services in the abstract.

87.     Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

88.     "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

89.     A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

90.     Defendant SPF's telemarketers transferred customer information, including Plaintiff's contact information, directly to Defendant SPF. Thus, the telemarketer had the "ability . . . to enter consumer information into the seller's sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592 ¶ 46.

91.     Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

92.     Defendant SPF is the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain Plaintiff as a customer when telemarketers solicited Plaintiff for solar panel systems on their behalf.

## DEFENDANT RODRIGUEZ IS PERSONALLY LIABLE

93.     Defendant Rodriguez refuses to take any action to stop or curtail the unlawful sales practices and unauthorized telemarketing calls because these practices benefit Defendant Rodriguez financially when consumers sign up for Defendant SPF's solar panel systems.

94.     "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

95.     The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992).  The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

96.     Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the

14

individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.

To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful contuct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is fare more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

97.   The Same Court held that corporate officers were also personally liable for DTPA violations

The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct.....For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation......Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001

98.   At all times material to the Complaint, acting alone or in concert with others, Defendant

Rodriguez has formulated, directed, controlled, had the authority to control, or participated in

the acts and practices of Defendant SPF including the acts or practices set forth in this

Complaint.

99.   Defendant Rodriguez is the principal director and operator of Defendant SPF controls the day-to-day operations of Defendant SPF and directed their telemarketers, employees, agents, salespersons, and solicitors to make TCPA violating phone calls and to solicit solar panel systems on behalf of Defendant SPF.

100.   Defendant Rodriguez approved the telemarketing scripts, signed the contracts, paid commissions for the illegal behavior, and directed the illegal calls to be made for Defendants financial benefit.

101.   Defendant Rodriguez knowingly and willfully ignores the law. Defendants continue to solicit solar panel systems via third party telemarketers.  These violations are the direct result of the instructions Defendant Rodriguez has given to their agents, employees, solicitors, salespersons, and others that carry out his schemes.

102.   Defendant Rodriguez is not merely a bystander and is the mastermind that scheme, planned, directed, initiated, and controlled the illegal and fraudulent behavior.

103.   Defendant Rodriguez is well aware their conduct violated the TCPA and Tex. DPTA and refused to alter their behavior.  Defendant Rodriguez is the sole director of Defendant SPF and the only person with the power to make the unlawful, fraudulent, and unethical behavior stop.  Yet, Defendant Rodriguez has taken no steps to stop the behavior because the behavior benefits Defendants financially.

104.   Defendant Rodriguez should be held jointly and severally liable for both the TCPA violations and Tex. Bus. Com. Code 302.101 via the Tex. DTPA because he actually committed the conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and directed this conduct.

105.    Defendant Rodriguez should be held liable because to do otherwise would simply allow

him to dissolve Defendant SPF and set up a new corporation and repeat their conduct.  This

would result in both the TCPA and DTPA being unenforceable.

## THE TEXAS BUSINESS AND COMMERCE CODE 305.053

106.    The Texas Business and Commerce code has an analogous portion that is related to the

TCPA and was violated in this case.

107.    The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or

subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101

108.    The actions of the defendants violated the Texas Business and Commerce Code 302.101

by placing solicitation phone calls to a Texas resident without having registration certificate and

bond on file with the Texas Secretary of State.

109.    Texas Business and Commerce Code § 302.101 provides a private right of action.  A

violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E,

Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by

Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code §

302.303.

110.    The use or employment by any person of a false, misleading, or deceptive act or practice"

causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

111.    Texas Business and Commerce Code §302.101 states that a person (1) "may not make a

telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas],"

(2) "unless the [person] holds a registration certificate for the business location from which the

telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

112.    Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

113.    Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing unauthorized phone calls.

114.    Defendants' calls harmed the Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

115.    Plaintiff has been annoyed, harassed, and irritated by unauthorized calls placed by and/or on behalf of Defendant SPF.

116.    Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to the Plaintiff.

## THE PLAINFF'S CELL PHONE IS A RESIDENTIAL NUMBER

117.    The calls were to the Plaintiff's cellular phone (915) 490-0898, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts.

## CAUSES OF ACTION:

## COUNT ONE:

18

**Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent**

118.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

119.    Defendants and/or their affiliates or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least five (5) times by placing non-emergency telemarketing calls to Plaintiff's cellular telephone number using an automatic telephone dialing system without prior express written consent.

120.    Plaintiff was statutorily damaged at least five (5) times under 47 U.S.C. § 227(b)(3)(B) by Defendants by the telephone calls described above, in the amount of $500.00 per call.

121.    Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

122.    Plaintiff is also entitled to and does seek an injunction prohibiting Defendants and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to any cellular telephone number using an ATDS and/or without prior express written consent.

## COUNT TWO:
### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

123.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

124.    Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls

for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

125.    Plaintiff was statutorily damaged at least five (5) times under 47 U.S.C. § 227(c)(3)(F) by Defendants by the telemarketing calls described above, in the amount of $500.00 per call.

126.    Plaintiff was further statutorily damaged because Defendants willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

127.    Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

**COUNT THREE:**
**Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)**
**(Against All Defendants)**

128.    Plaintiff incorporates the forgoing allegations as if fully set forth herein.

129.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

   a.  A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

   b.  Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

c.  In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

130.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

131.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## COUNT FOUR:
### Violations of The Texas Business and Commerce Code 305.053

132.    Plaintiff incorporates the foregoing allegations as if set forth herein.

133.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 305.053, by making non-emergency telemarketing unauthorized calls to Plaintiff's cellular telephone number without his prior express written consent in violation of 47 U.S.C. § 227 et seq. Defendants violated 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

134.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. Texas Business and Commerce Code 305.053(b).

135.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. Texas Business and Commerce Code 305.053(c).

## COUNT FIVE:
### (Violations of The Texas Business and Commerce Code 302.101)

---

[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

136.    Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

137.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 302.101, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

138.    Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. Texas Business and Commerce Code 302.302.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the defendants jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.      An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the individual and corporations for five calls.

D.      An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the individual and corporations for five calls.

E.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.      An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G.    An award to Plaintiff of damages, as allowed by law under the TCPA;

H.    An award to Plaintiff of interest, costs and attorneys' fees, as allowed by law and

equity.

I.    Such further relief as the Court deems necessary, just, and proper.

## **JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

July 22, 2022,                    Respectfully Submitted,

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-490-0898
Salaiz.ep@gmail.com

Case 3:22-cv-00251-FM   Document 1   Filed 07/22/22   Page 24 of 25
Solar Proposal for Eric Salavi

# Welcome to Solar Panel Texas

## Your custom design for 319 Valley Fair Way is ready to view,

Get Started

Created For:
**Eric Salavi**
**319 Valley Fair Way El Paso, TX**
Created By:
**Dannyney Rodriguez**
**(682) 219-2888 · dannyneysptx@gmail.com**

# EXHIBIT A

# Payment Terms

Your new monthly payment will be

**GoodLeap**

# $98/mo

**Your payment for the first 18 months**

When you apply **$8,529.02** to your loan by Month 19
**Your Monthly Payment...**

| | |
|---|---|
| Your payment for the first 18 months | **$98.00/mo** |
| Your payment starting month 19 with a voluntary payment | **$98.00/mo** |
| Your payment starting month 19 without a voluntary payment | **$134.00/mo** |

Any monthly payments shown are estimations only and do not guarantee financing. Your actual payment could vary based on your credit profile and being approved by the financial institution. Lender rates, fees or programs are subject to change without notice.
The fixed Annual Percentage Rate for a 25 year loan is 1.49%. APR is 0.50% higher without autopay. The amount of your first 18 payments will be $98. If you make a 26% prepayment in month 17 your remaining 282 payments will be approximately $98. If no prepayment is made, your remaining 282 payments will be approximately $134.

As the purchaser and owner of a solar photovoltaic system, you may qualify for certain federal, state, local or other rebates, tax credits or incentives (collectively, "Incentives"). If you have any questions as to whether and when you qualify for any Incentives and the amount of such Incentives, please consult and discuss with your personal tax or financial advisor. GoodLeap and Solar Panel Texas make no representation, warranty or guaranty as to the availability or amount of such Incentives.

| Price Summary | 6.4 kW  System |
|---|---|
| Year 1 System Production | 10,848 kWh |
| Solar Offset | 114% |
| Number of Panels | 16 |
| System Cost | **$32,341.90** |
| Additional Items ▷ | **$462.03** |
| Gross System Cost | **$32,803.93** |
| Net Cost Rebates or Credits [1] ▷ | **-$8,529.02** |
| Net System Cost | **$24,274.91** |

[1]Federal tax credit 26% of the total system cost, after utility rebates
*Tax incentives subject to availability. GoodLeap does not offer tax advice. Please consult a tax professional.
**Additional State & local incentives may also apply

# EXHIBIT A